ALANSON G. SMITH *v.* HENRY SHARPE, AND NATHAN CARPENTER, TRUSTEE.

## *Conditional Sale. Trustee Process.*

H. & B. sold the defendant a threshing-machine, to be theirs till paid for. The defendant took possession thereof and paid part of the purchase-money, when H. & B., not having a recorded lien thereon, took the machine into their possession, with the defendant's consent, for the purpose of perfecting their lien. While thus in their possession, C., at the defendant's request, and professedly and ostensibly in his interest, and for his benefit, purchased H. & B.'s interest in said machine, and took possession thereof,

knowing that the defendant had paid part of the purchase-money. C. did not expressly agree to buy the machine for the defendant, or to let him have it and take a lien thereon, or to pay him what he had paid towards it; but the defendant supposed, and had a right to suppose, that C. was buying it for him, and was to let him have it to run, and give him a chance to pay for it. But C. refused to let him have it to run, or to pay him what he had paid towards it, and denied that he had any interest in it. *Held,* that C. could not be held chargeable as trustee of the defendant.

TRUSTEE PROCESS.    A commissioner was appointed, who reported as follows :

" Early in September, 1871, Hyde & Brown, of Strafford, at the defendant's request, bought a threshing-machine of the manufacturer, at St. Johnsbury, at the price of $290, and paid $14 freight thereon to Strafford, and the defendant was to pay them therefor $45 out of his pension money then due, and the balance in weekly installments ·to the amount of about $20 a month, to meet the notes which Hyde & Brown had given for the machine when they bought it, and they retained title to the machine till the defendant paid therefor in full ; but they neglected to take a writing witnessing their lien, or if they took one, they neglected to have it recorded within thirty days, as required by statute. About the 8th or 10th of the next October, the defendant having the machine in his possession, and having then used it a little less than four weeks, Hyde & Brown, becoming alarmed on account of having no recorded lien on the machine, so informed the defendant, and, at their urgent request, he consented that they might take full possession and control of the machine, for the purpose, as Hyde represented to the defendant, and as the defendant understood, of getting a proper lien on the machine, and getting it recorded in time. At this time, the defendant had paid Hyde & Brown $76.63 on the machine.    Hyde & Brown, accordingly, took possession of the machine for the purpose aforesaid.    Very soon thereafter, the defendant called on Hyde to have the lien perfected, so he could again take the machine.    Hyde was ready at any time when Brown came around ; but nothing was done.

About the 11th or 12th of said October, the defendant went to see the trustee, Carpenter, with whom he had before, and while threshing for him with the machine, had talk about the matter, and who had then encouraged him that he would help him if Brown did not do right, or should attempt to force him,—and reminded him of what he had said, and asked him to buy out Brown, so he could go along again.    Carpenter then promised to, and did, meet the defendant and Hyde & Brown at the village that afternoon, to see about the matter.    On looking it over, Carpenter concluded he would not buy one share, unless he bought

the whole; and, finding more due than he expected, said he thought he would have nothing to do with it, and went to the hotel in the village. Hyde asked the defendant what the stick was, and the defendant replied that Carpenter thought he and Brown ought each to throw off ten dollars from the price of the machine. Thereupon, Hyde & Brown agreed to throw off $14, the cost of freight, and the defendant so informed Carpenter at the hotel; whereupon, Carpenter again went and saw Hyde & Brown, and finally bought their interest in the machine for $212.55. This he did, professedly and ostensibly, in the interest, and for the benefit of the defendant, and at his request and solicitation, and with knowledge that the defendant had paid said sum of $76.63 towards the machine. It did not appear that up to this time, Carpenter had seen the machine since the defendant threshed for him with it as aforesaid. On the day after this trade, Carpenter took possession of the machine, and has ever since retained it, refusing, on the demand of the defendant, to let him run it, and *denying that the defendant had any interest in, or right to, the same,* and, also, refusing to pay him any thing for what he had paid towards it.

Testimony was introduced as to the value of the machine at the time Carpenter traded for it as aforesaid, and to show that he paid all the machine was worth. No testimony was given to show, nor was it claimed, that the machine when bought of the maker by Hyde & Brown, was not worth all they paid for it; and from the evidence on the other point, I do not find the machine lessened in value by its use up to the time Carpenter took it, more than the sum of $14, which was deducted by Hyde & Brown.

I do not find that Carpenter, in express words, agreed to buy said machine for the defendant, or to let him have it and take a lien thereon, or to pay the defendant what, or any portion of what, he had paid on the same. But the defendant understood, and had a right to understand, that Carpenter was doing this for him, and was to let him have and run the machine, with a chance to pay for it.

If, from the facts reported, Carpenter is properly chargeable as trustee, I find him chargeable in the sum of $76.63, with interest on the same from October 12, 1871. But, if the $14 deducted from the price of said machine should, by law, enure to the benefit of the said Carpenter, then the sum so in his hands is to be lessened by that amount, and interest on the same from October 12, 1871. And if the court shall be of opinion that, by law, the said Carpenter cannot be held as trustee, then the court will so order in the premises."

The plaintiff claimed that the trustee should be adjudged chargeable for the amount the defendant had paid to Hyde & Brown towards the machine as aforesaid; but the court adjudged that the trustee be discharged, with costs, unless the plaintiff elected to pay the trustee during the term, the amount that he paid to Hyde & Brown as aforesaid, in which event, the court would adjudge the trustee chargeable, not for a debt, but for the machine as the property of the defendant; but the plaintiff not so electing, the court discharged the trustee, with costs. Exceptions by the plaintiff.

*Hebards*, for the plaintiff.

*C. W. Clarke*, for the trustee.

The opinion of the court was delivered by

REDFIELD, J. The only question raised in this case is, as to the liability of the trustee upon the commissioner's report. The defendant, Sharpe, bought, conditionally, of Hyde & Brown a threshing-machine for $304, to be paid for in installments, reserving the title in themselves until the price was paid. As their lien had not been recorded, they became alarmed, and resumed possession of the machine, as security until the price was paid. The defendant had then paid $76.63 towards the price of the machine. In that state of the case, the defendant induced the trustee to purchase the title to the machine of Hyde & Brown, for the balance due (after remitting $14), being $212.55. The commissioner finds that the defendant understood, and had the right to understand, that the trustee "was doing this for him, and was to let him have and run the machine, with a chance to pay for it." But there was no express contract to that effect. The trustee refused to let the defendant have the possession and use of the machine, and "denied that he had any interest in it."

I. The title to the machine was, clearly, in the trustee. The most that can be claimed by the plaintiff, is, that the defendant had paid a portion of the stipulated price, and was "to have a chance to pay" for the whole, and take the title. The defendant

neither tendered the residue of the price, nor took any means to perfect his title. The plaintiff does not claim that the trustee is liable to repay the defendant the $76 63 which he had paid towards the machine ; but is liable in damages for *denying his right* to pay for the machine.

Where the contract relation of parties is such that *duties* are to be performed, precedent to the acquisition of a right, that duty must be performed or tendered, before the right accrues ; and where performance is tendered, the law allows a remedy for enforcing the *right.* If the mortgagee should deny that the mortgagor had a *right to redeem*, it would be novel for the former, without tendering payment, to bring his action for breach of contract. It would rather be " slandering the title," than refusing to perform a *duty* imposed by contract. The *duty*, in such cases, is conditioned and contingent, and never has become absolute.

The court below allowed the plaintiff the full benefit of the *contract* between the defendant and trustee ; and we think it the extent of liberality which the law could allow.

Judgment affirmed.